26 N.Y.2d 990 (1970)
Claire F. Stanton, as Administratrix of The Estate of Nathan L. Stanton, Deceased, Appellant,
v.
State of New York, Respondent. (Claim No. 41420.)
Court of Appeals of the State of New York.
Argued April 6, 1970.
Decided April 23, 1970.
Alger A. Williams, Frank G. Raichle and Irving E. Field for appellant.
Louis J. Lefkowitz, Attorney-General (Douglas L. Manley and Ruth Kessler Toch of counsel), for respondent.
Chief Judge FULD and Judges SCILEPPI, BERGAN, BREITEL and JASEN concur in memorandum; Judge BURKE dissents and votes to reverse in a separate opinion; Judge GIBSON taking no part.
*991 MEMORANDUM.
We affirm for the reasons stated in the majority opinion at the Appellate Division. We merely add the following to amplify our determination.
Appellant in this action seeks a recovery against the State on the theory that the alleged negligence of a State trooper resulted in the death of her husband. While it is most unfortunate that bystanders are sometimes innocently involved and injured by the police in the performance of their duties, such emotional and understandable human considerations are not a substitute for proof of negligence. The trooper in the instant case was engaged in the regulation of highway traffic. He was faced with an emergent situation and chose what he considered, in his best judgment, to be the most effective means of dealing with a motor vehicle operator who was endangering the lives of other motorists on the highway. While hindsight can often furnish reasons for following one course or another, the acts of the trooper here must be considered as of the time when, and circumstances under which, they occurred. With that in mind, *992 we find that his conduct was not unreasonable or negligent. At least there was an issue of fact, the result of which is beyond our power of review.
Accordingly, the order appealed from should be affirmed.
BURKE, J. (dissenting).
The order of the Appellate Division should be reversed and the case remitted to the Court of Claims for an assessment of damages since the claimant clearly sustained her burden of establishing that the State's employee's negligence was at least a concurrent proximate cause of the death of the claimant's intestate. The record in the present case discloses actions on the part of the State trooper involved which can without exaggeration be described as so grossly negligent that the dismissal of the claim shocks the conscience. A recital of the facts and circumstances amply demonstates the basis for that shock.
At about 12:45 A.M. on the night of July 1, 1961, a State trooper was on patrol and was proceeding north on Route 17, a four-lane highway with a wide center mall, when he saw a vehicle approaching him in the northbound lane (i.e., traveling south on the northbound side of the mall). The approaching vehicle was traveling at about 45 to 50 miles an hour. The trooper turned on his roof light flasher, turned on his spotlight and swept it from side to side and sounded his siren in an attempt to stop the southbound car. The car nevertheless continued past him and the trooper turned his car around and pursued the other car for about one half mile. He drew alongside and halted the car facing south in the northbound lane nearest the mall. The trooper pulled his car into that same lane behind the stopped car, leaving his roof light and headlights on. The trooper approached the stopped car and directed its driver to "pull off". He then walked away to direct oncoming traffic away from the lane in which his patrol car remained, instead of driving the patrol car ahead of the other car on to the mall. The driver of the stopped car started onto the grass and proceeded about 30 or 40 feet and then accelerated and proceeded south again in the northbound lane of the highway. The trooper ran to his own car and then began a "pursuit" whose qualities could be considered melodramatic were it not for the tragic results for claimant and claimant's intestate.
As the pursuit began, the trooper radioed to his barracks, asked for a stolen car check of the pursued vehicle's registration *993 and requested assistance. In the space of about one half mile, the trooper closed the gap between his car and that of the other vehicle and proceeded behind it. The trooper had turned off his roof light and his headlights and both vehicles reached speeds in the vicinity of 100 miles per hour as they both proceeded south in the northbound lanes of the highway. The trooper was informed that there was no record indicating that the pursued vehicle had been stolen and that other policemen were proceeding north to assist him. The trooper was also contacted by a State police investigator who was in an automobile nearby; the trooper informed the investigator that he was going to pull alongside the pursued vehicle and shoot its driver. The investigator advised him not to do so and, after some hesitation, the trooper acknowledged the advice but stated that he was "willing to take the chance."
As the pursuit proceeded, the cars at times occupied both northbound lanes, with the lead changing hands several times. The trooper finally managed to pass the pursued vehicle and began weaving back and forth in the two lanes in front of it in an attempt to get it to stop. He eventually succeeded in forcing the pursued vehicle into the northbound driving lane after the two cars apparently brushed. The pursued car then sideswiped a vehicle proceeding north in the right hand northbound lane, went into a skid and continued down the road sideways, finally colliding with the oncoming vehicle in which claimant's intestate was riding. Claimant's intestate died as a result of the injuries suffered in that collision and claimant thereafter instituted this action against the State to recover for the negligence of the trooper in failing to prevent the driver of the errant vehicle from proceeding after he had stopped him, and in initiating a pursuit which reached speeds of approximately 100 miles an hour in a southerly direction on the northbound lanes of the highway.
On any view of these facts, the trooper was negligent and that negligence was a proximate cause (concurrent with the obvious negligence of the driver of the vehicle being pursued) of the claimant's intestate's injuries and death. The mere fact that it was not the trooper's vehicle which struck the claimant's intestate's vehicle is of no significance since it is clear that the trooper (1) failed in his duty to prevent the errant vehicle from proceeding further and (2) in fact, by virtue of his pursuit, *994 and the tactics employed in it, propelled that errant vehicle into claimant's intestate's vehicle. There was expert testimony presented at the trial, by both the claimant and the State, that the trooper, from the outset, ignored virtually every accepted police procedure involved in the stopping and checking of vehicles observed committing traffic infractions. A key procedure, familiar to every motorist involved in such an encounter, is that of checking the license and registration of the driver, omitted here. Of even more importance in the present circumstances, is the procedure of approaching the stopped vehicle and seeing to it that the keys are removed from the ignition so that the vehicle may not proceed any further (this would seem to have been minimally required here where the stopped vehicle was an obvious danger to any and all traffic proceeding north); this was also not done. The courts below properly noted that liability in this case is dependent upon the principles of proximate cause, duty and foreseeability as enunciated in Williams v. State of New York (308 N.Y. 548, 554). As to duty, it is clear that the trooper was bound to stop the errant vehicle and even he apparently recognized this when he did so. To whom was the duty owed? In view of the danger presented by the stopped vehicle, it seems rather obvious that the duty was owed to any and all vehicles using the northbound lanes of the highway, of which the claimant's intestate was one. Having stopped the vehicle, was his duty at an end? Hardly, since the very nature of the vehicle's movement would indicate even to the most minimally responsible officer that further inquiry of the driver and immobilization of the vehicle were indicated. The trooper here, however, contented himself, in violation of proper police procedure, with a mere direction to pull off the road and turned his attention elsewhere. His inattention allowed the vehicle to resume its precarious course and the trooper's failure to prevent that resumption was a violation of that duty owed to each and every user of the highway. Was injury and death at the hands of this driver a foreseeable consequence of the officer's violation of his duty? Only one answer is possible: it was not only foreseeable that that vehicle would collide with another or others lawfully and carefully driving in the right direction, but it was virtually guaranteed. Was the violation of that duty the proximate cause of the injury and death which actually occurred? The courts below have held, and a majority *995 of this court apparently agrees that the proximate and sole cause of the injury and death was the negligence of the driver of the car being pursued since it was that car which actually collided with the vehicle in which claimant's intestate was riding. Undoubtedly, the negligence of the errant driver was a proximate cause of the collision but, from that conclusion it does not necessarily follow that there was no other concurrent, contributing cause. Manifestly, the danger to other users of the highway represented by the vehicle traveling south in the northbound lane of the highway had been brought to rest, at least temporarily, by the trooper's initial stop. It was only through the trooper's careless omission of the procedures which should have been followed, that a deadly menace was set loose on the highway once again. Can it therefore be said, as matter of law, that the officer's initial negligence was not the "primary" wrong which set in motion the deadly force which actually produced the injury and death? The only reasonable conclusion is that claimant's evidence demonstrated that the officer's primary negligence set that deadly force in motion, after it had temporarily been brought to a halt, and was, therefore, a concurrent proximate cause of the results that followed. In this regard, it should be noted that the conclusion reached is not based upon any "second-guessing" of the police officer's conduct in terms of possible judgments as to what should be done. The expert testimony, without contradiction in this record, established that the omission to use ordinary, elementary and generally accepted police procedures directly resulted in the unleashing of a vehicle and a person whose extreme danger to other users of the highway was patently obvious.
Alternatively and additionally, the very conduct of the trooper's pursuit cannot be viewed as anything but negligent. The trooper's attitude toward the entire situation is aptly demonstrated by his eagerness to draw parallel to the pursued vehicle, cowboy style, and take a shot at the driver. After being advised not to do so, he reluctantly acquiesced, but with the indication that he "was willing to take the chance," even though the chance in fact involved was that of having the driver he wanted to shoot lose control of his vehicle at 100 miles per hour. Such nonchalance, in the circumstances, amounts to nothing but the most callous and reckless disregard for human life. In addition, the pursuit resulted in having two vehicles traveling south *996 in the northbound lanes of the highway, thereby doubling the danger to users of the highway (the trooper's own testimony was that, before being stopped, the other vehicle was traveling only half as fast as both cars were during the course of the pursuit). In addition, the trooper weaved back and forth in front of the other vehicle and, in fact, it was the trooper's movement of his own vehicle which forced the other vehicle into the lane in which the initial impact occurred and as a result of which the pursued vehicle then collided with the claimant's intestate's vehicle. Was this in the exercise of reasonable care in the circumstances? The State argues that certain provisions of the Vehicle and Traffic Law relating to "emergency" vehicles were not violated by this trooper in the course of his pursuit; the claimant argues, however, that those same provisions were violated by the trooper and that those very violations are evidence of his negligence in the conduct of the pursuit. Section 1104 of the Vehicle and Traffic Law grants to "emergency" vehicles certain privileges in their operation; they may exceed the maximum speed limits and they may disregard regulations governing directions of movement (subd. [b], pars. 3, 4). Significantly, however, speed limits may be exceeded by such vehicles only so long as doing so "does not endanger life or property" (subd. [b], par. 3). Indeed, the Legislature specifically provided, as to these "privileges" that they "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due care for the safety of all persons," nor shall they "protect the driver from the consequences of his reckless disregard for the safety of others." (Vehicle and Traffic Law, § 1104, subd. [d]). This trooper may well have been privileged to exceed the speed limit in pursuing the vehicle he had stopped and he may even have been privileged to speed in the wrong direction in doing so. Nevertheless, he himself clearly and unmistakably "endangered life or property" by doing so; he clearly and unmistakably did not drive "with due regard for the safety" of claimant's intestate or any of the other vehicles lawfully driving in the right direction on that night; and, therefore, he may not, nor may his responsible employer  the State, try to hide behind the provisions of the above section to protect himself or the State from the consequences of his "reckless disregard for the safety of others."
To hold otherwise in the present case is to blink at the realities *997 of what occurred and to shield wrongdoing of the worst kind. Moreover, the present case stands as precedent for the proposition that a reckless disregard for the safety of the other users of a road may be overlooked because the police officer displaying such reckless disregard chose to risk the lives of those users of the road in order to pursue, at 100 miles an hour, in the dark and going the wrong way, a driver guilty of a traffic infraction. In effect, today's decision immunized from responsibility an officer who, after observing a vehicle engaged in a dangerous maneuver, himself engages in that same maneuver in what he conceives to be the exercise of his duty and thereby contributes to the killing or maiming of others lawfully using the highway on which the maneuvers occur.
It is also apparent that this recklessness on the part of the police officer is now to be glossed over because the majority is reluctant to engage in so-called "hindsight". But hindsight is nowhere involved in this case, as the testimony of the police experts indicates; what is involved is the officer's inexcusable failure to employ even minimal professional foresight. Considering the trooper's acts as of the time when, and the circumstances under which, they occurred, the ineluctible conclusion is that the trooper was negligent. Because I cannot subscribe to the opposite conclusion, I must dissent from today's decision.
Order affirmed, without costs, in a memorandum.